## Case No. 16,716.

### UNITED STATES v. WILLIAMS.

[1 Dill. 485.] [1]

Circuit Court, D. Minnesota. 1871.

CRIMINAL LAW—PLEA IN ABATEMENT—QUALIFICATION OF GRAND JUROR—PRACTICE.

1. Pleas in abatement to an indictment are dilatory pleas; and not being favored, the law requires that they shall be pleaded with strict exactness. (Arguendo.)

[Cited in U. S. v. Hammond, Case No. 15,-294.]

[Cited in State v. Duggan, 15 R. I. 415, 6 Atl. 597.]

2. A plea in abatement construed to mean that the indictment should not be further prosecuted because an interested person caused himself and others to be nominated and placed upon the grand jury which found the bill.

3. Whether such a plea is good, quere? Authorities cited.

4. Distinction suggested between disqualification of a juror, absolutely pronounced by statute, such as alienage, non-residence, &c., and which would constitute cause of principal challenge, and a disqualification arising from bias, interest, and the like, which would constitute simply cause of challenge to the favor. (Arguendo.)

[Cited in U. S. v. Hammond, Case No. 15,-294.]

[Cited in State v. Easter, 30 Ohio St. 342.]

5. Where a prosecutor, without any agency of his own, is drawn by lot from a large number of names to serve as a grand juror, and is sworn on the panel without objection, and prefers a charge, testifies, and takes part in the deliberations concerning it, and a bill is found, held (construing the acts of congress relating to grand juries, and the statutes of the state respecting the qualification of grand jurors), that the mere fact that the prosecutor was a member of the jury, and participated in its proceedings would not be good ground for a plea in abatement to the indictment.

[Cited in U. S. v. Clune, 62 Fed. 800.]

[Cited in Com. v. Woodward, 157 Mass. 518, 32 N. E. 939; Lascelles v. State, 90 Ga. 347, 16 S. E. 949; Lawrence v. Com., 86 Va. 573, 10 S. E. 842; State v. Sharp, 110 N. C. 604, 14 S. E. 504.]

6. The act of congress, of July 20, 1840 (5 Stat. 394), as to the "qualification" of grand jurors in the courts of the United States, discussed, and the opinion, arguendo, expressed that the word qualification, as there used, referred to general qualifications, such as age, citizenship, &c., and not to bias, interest, and the like, which do not disqualify generally, but only at the instance of the party concerned, and where the effect of a challenge, if sustained, is, not to exclude the juror from the panel, but only

---

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

from acting in the case of the defendant who interposed the challenge.

[Cited in State v. Hamlin, 47 Conn. 106.]

7. Reasons drawn from the history of the grand jury, for requiring more jurors to be summoned than are necessary to concur in finding a bill, stated.

8. Upon the verdict of a jury against a plea in abatement to an indictment, judgment was entered overruling the plea, and allowing the defendant to plead not guilty.

The indictment charges the defendant, late deputy collector of internal revenue, with the embezzlement of certain public money. The bill was found in the district court, without any preliminary examination, before a magistrate; and after plea in abatement, and replication filed, the case was transferred to this court. It is stated in the indictment that it is found by a grand jury of seventeen jurors. On the bill appears this indorsement: "Names of Witnesses: J. N. Hall, D. L. How." No other witnesses are named in the indorsement on the bill.

The plea in abatement, after the formal part, is in these words: "The United States ought not further to prosecute the said indictment, because the defendant says that three of the grand jurors of the panel which found the indictment and acted thereon, namely, D. L. How, J N. Hall, and J. W. Senserbox were incompetent to act or sit thereon, for that the said D. L. How was then and there surety for this defendant as such deputy collector of internal revenue, and the said J. N. Hall was the collector of internal revenue under whom this defendant was such deputy; and the said D. L. How was then and is the prosecutor and prosecuting witness along with the said J. N. Hall, upon the accusation set forth in the indictment, and all said three persons became members of said grand jury at the instance and denomination of said D. L. How." Here follows the formal and proper conclusion to such a plea.

These allegations are traversed by the replication, which asks that the issues thereby made be inquired of by the country.

At the June term, 1870, of the circuit court, a jury was called to try the issues made by the replication to the plea in abatement, and both parties produced testimony. The court submitted to the jury the following special questions, which the jury answered as below stated:

(1) Special Issues to the Jury: Did the said How, Hall and Senserbox, named in the plea, serve on the grand jury which found the bill of indictment against the defendant, and were they present at, and did they participate in, the proceedings on the charge against the defendant; and were they present when the vote was taken on the finding of the bill? The jury answer, "Yes."

(2) Was the said Hall collector of internal revenue, and said Williams his deputy, and said How the surety of the said Williams? The jury answer, "Yes."

(3) Were the said Hall and How, or either of them, the prosecutor in the charge against the said Williams before the said grand jury at the term when the bill was found? The jury answer, "No."

(4) Did said Hall or How testify before the said grand jury as witnesses on the charge against the said Williams? The jury answer, "Yes."

(5) Did the said Hall or How become members of the said grand jury which found the bill at the instance, and on the nomination of the said How? The jury answer, "No."

No evidence was given on the trial as to the said Senserbox named in the plea, except that he was a member of the grand jury, at the term at which the bill was found.

After the special verdict above given was found, the defendant moved for a new trial upon the third special interrogatory on two grounds, to-wit: (1) The finding of the jury that neither Hall nor How was the prosecutor of the charge against the defendant before the grand jury, was against the evidence delivered on the trial. (2) Upon the ground of newly discovered evidence, viz: A letter from How to the defendant, dated sometime before the bill was found, stating that if the latter did not "make good the amount of money he had embezzled as deputy collector, and settle with Mr. Hall, I shall cause criminal proceedings to be commenced against you as an embezzler," &c. An affidavit of the defendant is filed showing that this letter had escaped his recollection, and was accidentally found after the trial, when searching for the contract between him and Hall, his principal. An affidavit of the defendant's attorney is also filed stating his ignorance until after the trial of the existence of this letter. It is this motion for a new trial which is now before the court for determination. In 1866, the court "ordered that in actions at law, the practice and pleadings now existing in the district courts of the state of Minnesota be adopted in the circuit court of the United States for this district,"—but the order did not extend to criminal cases or proceedings.

The statutes of Minnesota, after prescribing the qualifications and number of grand jurors in the state courts, and how these shall be obtained, provides that "a person held to answer a charge for a public offence, may challenge the panel of the grand jury, or any individual juror, before they retire, after being sworn and charged by the court." Rev. St. 1866, p. 637, § 13. It limits challenges to the panel to three causes, all referring to irregularities in the drawing of the names from the grand jury box. The statute then enacts that "a challenge to an individual juror may be interposed for one or more of the following causes only: (1) That he is a minor. (2) An alien. (3) Insane. (4) That he is a prosecutor upon a charge against the defendant. (5) That he is a witness on the part of the prosecution, and has been served

with process, or bound by a recognizance as such. (6) A state of mind which satisfies the court that the juror cannot act impartially, and without prejudice to the substantial rights of the party challenging." Rev. St. Minn. 1866, pp. 637, 638.

A subsequent section in the same chapter provides that a grand juror is not to be questioned for his action as such juror, "except for perjury, of which he may be guilty in making an accusation, or giving testimony to his fellow jurors." Id. p. 640.

By the judiciary act it is provided that jurors to serve in the courts of the United States "shall have the same qualifications as are requisite for jurors by the laws of the state of which they are citizens, to serve in the highest courts of law of such state." 1 Stat. 88, § 29. By the act of congress, July 20, 1840, it is provided that "jurors to serve in the courts of the United States, in each state respectively, shall have the like qualifications, and be entitled to the like exemptions, as jurors of the highest court of law of such state now have and are entitled to, and shall hereafter, from time to time, have and be entitled to, &c. 5 Stat. 394, § 1. By the act of congress of March 3, 1865, it is provided that grand juries in the national courts, "shall consist of not less than sixteen and not exceeding twenty-three persons; * * * and whenever a challenge to an individual grand juror is allowed, and there are not other jurors in attendance to complete the panel, the court shall make an order to the marshal to summon a sufficient number of persons for that purpose. No indictment shall be found without the concurrence of at least twelve grand jurors." 13 Stat. 500, § 1.

What constitutes a sufficient cause for a challenge to an individual grand juror is not prescribed by this act, but by another act it is provided that certain disloyal practices shall be grounds of challenge of grand jurors and petit jurors. 12 Stat. 430.

The motion for a new trial was argued by

Chatfield & Warner, for the motion.

C. K. Davis, Dist. Atty., contra.

Before DILLON, Circuit Judge, and NELSON, District Judge.

DILLON, Circuit Judge. It is essential to a proper disposition of the motion for a new trial to determine the nature of the plea in abatement. The language of the plea appears above. After carefully considering it, our opinion is that the gravamen of the plea is that the parties named (sustaining the relation to the defendant described therein) "became members of the grand jury which found the bill, at the instance and denomination of the said D. L. How." All that precedes this averment is introductory, and intended to show why it was improper, and prejudicial to the rights of the defendant that these parties should have served on the grand jury which indicted him.

It is not believed that it was the purpose of the pleader improperly to set forth in one plea three distinct matters in abatement, to-wit: (1) That How was the prosecutor. (2) That he was the prosecuting witness along with Hall. (3) That the three parties named became grand jurors at the instance of How; but rather that it was the purpose to set forth the one ground above stated.

Pleas of this character are dilatory, and not being favored, the law requires that they shall contain all essential averments, pleaded with strict exactness. O'Connell v. Reg., 11 Clark & F. 155, 9 Jur. 25; Com. v. Thompson, 4 Leigh, 607; State v. Newer, 7 Blackf. 307; Wilburn v. State, 21 Ark. 198; Hardin v. State, 22 Ind. 347; Lewis v. State, 1 Head, 329.

The plea in abatement seems to be drawn as if founded upon the celebrated and ancient statute of 11 Hen. IV. c. 9, passed in 1410, and which may be found set out in Bac. Abr. "Juries," A, 233. This statute, after reciting the abuses which led to its enactment, declares: "Henceforth no indictment shall be made by any such (improper) persons, but only by inquests of the king's lawful liege people * * * returned by the sheriff * * * without any denomination to the sheriff, by any person of the names which by him should be impannelled, except it be by officers sworn and known to make the same; * * * and if any indictments be hereafter made in any point to the contrary, that the same indictment shall be also void, revoked, and forever holden for none."

The plea then, in this case, is to be taken as setting forth that the indictment should not be prosecuted, because the persons mentioned in the plea were, by an interested party, viz., Mr. D. L. How, caused to be placed on the grand jury which found the bill.

The question is not now directly before us whether such a plea is good in the federal courts. Undoubtedly such an objection is good if taken by a person under prosecution, or who has been held to answer, by way of challenge, before the jury is sworn or the indictment found.

Whether in the case of a person not previously bound over it may be taken after a bill found by plea in abatement or motion to quash, the authorities are not entirely agreed. As tending to show that it must be taken before indictment is found, see Bac. Abr. "Juries," A, 233; People v. Jewett, 3 Wend. 314, 6 Wend. 386; Com. v. Smith, 9 Mass. 107. Compare Com. v. Parker, 2 Pick. 563; State v. Rickey, 5 Halst. [10 N. J. Law] 83; Thayer v. People, 2 Doug. (Mich.) 417; Baldwin's Case, 2 Tyler, 473; Rex v. Sheppard, 1 Leach, Crown Cas. 101.

But in many, indeed, from an examination of the authorities, I may say that in most of American states it is held that where a party has not been recognized to answer, he may plead in abatement, if done seasonably, the want of statutory qualifications, such as want

of citizenship, &c., in grand jurors who found the bill. Hardin v. State, 22 Ind. 347; Wilburn v. State, 21 Ark. 198; State v. Cole, 17 Wis. 674; Kitrol v. State, 9 Fla. 9; Stanley v. State, 16 Tex. 557, and other cases cited; Whart. Cr. Law (2d Ed.) pp. 172, 173; and in State v. Ostrander, 18 Iowa, 435, note.

In the federal courts the sufficiency of pleas in abatement, in the absence of legislation by congress touching the question or authorized rules of court, must be tested by the principles of the common law. And by the common law it is undoubtedly true as stated by Mr. Wharton, that "if a disqualified person is returned as a grand juror it is good cause of challenge." Whart. Cr. Law (2d Ed.) 170; 1 Chit. Cr. Law, 309. Mr. Chitty at the place just cited states the doctrine thus: "If a disqualified juror be returned he may be challenged by the prisoner before bill presented; if the disqualification is discovered afterwards, the defendant may plead it in avoidance and answer over to the felony." And see, also, Hawk. P. C. bk. 2, c. 25, § 16.

But the disqualification thus referred to is such as is pronounced by statute, and which absolutely disqualifies, such as alienage, nonresidence, want of free-hold qualifications, where that is required, &c., and which would constitute cause of principal challenge as distinguished from challenge to the favor arising from bias, interest, and the like. See on this point, State v. Rickey and People v. Jewett, before cited.

But it is not necessary further to pursue the discussion of the subject in this place, for if the gravamen of the plea in the case at bar be such as we have above indicated, the fifth special finding of the jury is the material one, and by that the jury have negatived the truth of the plea by saying that neither Hall nor How became members of the grand jury, which found the bill, at the instance or on the nomination of How. The finding of the jury on this point is not questioned by counsel, no motion for a new trial is made with respect to it, and it is to be taken as conclusively correct. Thus taken, it is to be presumed that both Hall and How were properly selected to serve on the grand jury, and that they did not become members of it at the instance or by the procurement of How. In this view of the case, the third finding, concerning which the motion for a new trial is made, is, under the plea, immaterial; and if so, a new trial should not be granted thereon, even though the court should be, as it is, of opinion that the verdict of the jury on this issue was against the evidence.

The foregoing view is based upon the construction above given to the plea in abatement. But suppose, as the jury might have found from the evidence, or might yet find if a new trial should be granted as asked in the motion under consideration, that How was the prosecutor or prosecuting witness against the defendant, and suppose the plea be taken as intended to set this forth as the ground of abatement of the indictment, would the plea then be sufficient in law to work this result? This question must, in my opinion, for the reasons which I proceed to state, be also answered in the negative. By the act of congress referred to in the statement, jurors in the federal courts are required to "have the like qualifications and are entitled to like exemptions as jurors" in the highest courts of the state; by the statute of Minnesota it is provided that "all persons who are qualified electors of this state are liable to be drawn as grand jurors, except as hereinafter provided." Rev. St. 1866, p. 636, § 3. The examinations consist of certain public officers, followers of certain professions and avocations, persons over a specified age, infirm persons and such as have been convicted of an infamous crime. The grand jury is directed to be selected by lot from a jury box containing names procured in a designated manner. Then follow the provisions referred to in the statement of the case authorizing any person held to answer for a public offense to challenge for the causes specified in the panel of the grand jury any individual juror.

Among the grounds of challenge to an individual grand juror is, "that he is a prosecutor upon a charge against the defendant;" and also, "that he is a witness on the part of the prosecution, and has been served with process, or bound by a recognizance as such."

The statute provides that: "If a challenge to the panel is allowed, the grand jury are prohibited from inquiring into the charges against the defendant by whom the challenge was interposed; if they should, notwithstanding, do so, and find an indictment against him, the court shall direct it to be set aside." Rev. St. 1866, p. 638, § 18. The next section enacts that, "If a challenge to an individual juror is allowed he cannot be present at, or take part in, the consideration of the charge against the defendant who interposed the challenge, or the deliberation of the grand jury thereon. The grand jury shall inform the court of a violation of this provision, and it is punishable by the court as a contempt." Id. §§ 19, 20.

The only other section of the Minnesota statute bearing upon the present inquiry, is the one which provides that a grand juror shall not be questioned for his acts as such, "except for a perjury, of which he may be guilty in making an accusation, or giving testimony to his fellow-jurors." Id. p. 640, § 42.

Now we have seen, by the act of congress of July 20, 1840, that whoever is qualified to serve as a grand juror in the state courts is qualified to serve as such in the courts of the United States. The argument on behalf of the defendant, based upon the act of congress just cited and the above-mentioned provisions of the Minnesota statute, is, that by the state statute a prosecutor or prosecuting witness is not qualified to serve as a grand juror in the state courts, and hence not qualified to serve in the courts of the United States.

Now what does the word "qualification" mean in the act of July 20, 1840, by which jurors in the federal courts are required to have the like qualifications, and are entitled to like exemptions, as jurors, in the state courts? In my opinion, the word refers to the general qualifications as to age, citizenship, &c., not to special reasons which at the instance of a party accused and bound over may at his election amount to a disqualification to sit in his case, but which, if they exist, do not exclude the juror from the panel, but only preclude him from acting in the particular case. He is, nevertheless, if the challenge be sustained, a member of the grand jury (see State v. Ostrander, 18 Iowa, 435, 441), the only effect being that he shall not "take part in consideration of the charge against the defendant, who interposed the challenge."

I am aware that a different view on this point seems to have been taken by a most distinguished judge (Nelson, J., in U. S. v. Reed [Case No. 16,134]), from whose opinion I differ with the most unaffected distrust of the correctness of my own judgment.

But suppose I am mistaken on this point, yet I think it clear that when all the provisions of the Minnesota statute are considered, it is manifest that where there has been no previous holding of the party to answer, the statute as to, challenging jurors does not apply, and that the statute itself contemplates that a grand juror "may make an accusation, or give testimony to his fellow-jurors."

The jury in the case under consideration have found that How (who in the view we are now taking of the question may be admitted to be the prosecutor or prosecuting witness) did not procure himself to be placed upon the panel. He is to be regarded as having been legally selected and summoned to serve on the grand jury. Being thus properly on the grand jury, without any agency or intervention of his own, suppose he knows of a public offence having been committed within the jurisdiction of the court, and of a nature cognizable by the jury of which he is a member; can he not disclose it to his fellow-jurors? Is it not, indeed, his duty to do so? If he knows any material fact may he not be sworn as a witness before the jury? Indeed, is it not his duty, in such a case, to be sworn, especially if required to do so by the jury? These questions must all, I think, be answered affirmatively. And in my opinion it does not alter the matter, or vitiate the indictment, if the juror should happen to be the party injured, and hence the prosecutor or prosecuting witness, always assuming that he was selected and put upon the jury without any improper act or influence of his own.

That such a grand juror is not disqualified within the contemplation of the statute, is a fair if not necessary inference from the provision before cited, exempting a grand juror from liability for his acts as such, "except for a perjury, of which he may be guilty in making an accusation, or giving testimony to his fellow-jurors." This language clearly presupposes that a juror may make an accusation, and may testify as a witness concerning it.

In England, it is said that a grand jury may find a bill on their own knowledge (Reg. v. Russell, 1 Car. & M. 247); how much better to find it upon the sworn evidence of one or more of their own number.

Other considerations fortify the above views. At common law the grand jury may consist of any number between twelve and twenty-three; but to find a bill there must be at least twelve of the jury agree. 4 Bl. Comm. 302, 306; and cases and authorities cited, 18 Iowa, 442.

By the act of congress of March 3, 1865 (13 Stat. 500), it is provided that grand juries in the courts of the United States "shall consist of not less than sixteen and not exceeding twenty-three persons, * * * and that no indictment shall be found without the concurrence of at least twelve grand jurors." The earlier authorities show that the accusing body now called the grand jury originally consisted of twelve persons, and all were required to concur. The number was subsequently enlarged to twenty-three, which was the maximum. See authorities cited, 18 Iowa, 442. Undoubtedly one reason why both at common law and by act of congress more jurors are required to be summoned, and by the act of congress to be impannelled than are necessary to find a bill, is to prevent, on the one hand, the course of justice from being defeated if the accused should have one or more friends on the jury; and on the other hand, the better to protect persons against the influence of unfriendly jurors upon the panel.

In any view which I have been able to take of the case the motion for a new trial must be denied; and on the verdict of the jury a judgment will be entered overruling the plea in abatement, and allowing the defendant to enter a plea of not guilty.

NELSON, District Judge, concurs in the view taken of the construction of the plea in abatement; but is of opinion that if a prosecutor, who is a member of the grand jury, should take part in the finding of the indictment, it would vitiate it.

Motion denied.